UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DELANDO JOHNSON,

       Defendant-Movant,

       Case No. 1:24-cv-831

v.

       Honorable Paul L. Maloney

UNITED STATES OF AMERICA,

       Plaintiff-Respondent.

_____/

## OPINION AND ORDER

Currently pending before the Court is Defendant-Movant Delando Johnson ("Defendant")'s *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) For the reasons set forth below, Defendant's motion will be denied.

**I.**    **Background**

On January 29, 2021, the Government filed a Criminal Complaint charging Defendant with three counts of distribution of heroin, in violation of 21 U.S.C. § 841(a)(1). *See* Crim. Compl., *United States v. Johnson*, No. 1:21-cr-34 (W.D. Mich.) (ECF No. 1). After Defendant's arrest, John Karafa was appointed to represent him.

On February 24, 2021, a grand jury returned an Indictment charging Defendant with: (1) two counts of distribution of heroin and fentanyl, in violation of 21 U.S.C. § 841(a)(1); (2) one count of distribution of heroin, in violation of 21 U.S.C. § 841(a)(1); (3) two counts of possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1); (4) one count of possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C.

§ 924(c)(1)(A)(i); and (5) one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g). *See* Indictment, *id.* (ECF No. 14).

The grand jury returned a Superseding Indictment on May 25, 2021, charging Defendant with: (1) three counts of distribution of heroin and fentanyl, in violation of 21 U.S.C. § 841(a)(1); (2) two counts of possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1); (3) one count of possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (4) one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g). *See* Superseding Indictment, *id.* (ECF No. 32). The Superseding Indictment also noted that in May of 2015, Defendant had been convicted in Muskegon County, Michigan, of manufacturing/delivery of controlled substances, in violation of Mich. Comp. Laws § 333.7401. *See id.* (ECF No. 32, PageID.159).

A day later, Defendant, through counsel, filed a motion to suppress evidence obtained as a result of an allegedly invalid search warrant. *See* Mot. to Suppress, *id.* (ECF No. 35). Before the Court could conduct a hearing on that motion, the grand jury returned a Second Superseding Indictment on June 29, 2021, charging Defendant with the same offenses set forth in the Superseding Indictment. *See* Second Superseding Indictment, *id.* (ECF No. 42). On June 30, 2021, the Government filed an Information and Notice of Prior Serious Drug Felony and Felony Drug Conviction, setting forth Defendant's 2015 conviction from Muskegon County and noting that his prior conviction made him subject to enhanced penalties if convicted of any of the drug trafficking counts set forth in the Second Superseding Indictment. *See* Information, *id.* (ECF No. 44).

The Court conducted a hearing on the motion to suppress on September 2, 2021. The next day, the Court issued an order denying the motion. *See* Order, *id.* (ECF No. 49).

On September 13, 2021, the Government filed a Plea Agreement in which Defendant agreed to plead guilty to Counts Five and Six of the Second Superseding Indictment, charging him with possession with intent to distribute controlled substances and possession of a firearm in furtherance of a drug trafficking crime. *See* Plea Agreement, *id.* (ECF No. 50). Defendant appeared before Magistrate Judge Phillip J. Green for his change of plea hearing on September 16, 2021. Magistrate Judge Green entered a Report and Recommendation recommending that Defendant's guilty plea be adopted. *See* R & R, *id.* (ECF No. 57.) However, on September 30, 2021, Defendant, through counsel, filed a motion to withdraw his guilty plea. *See* Mot., *id.* (ECF No. 60). In an order entered on October 5, 2021, the undersigned granted that motion and rejected Defendant's guilty plea. *See* Order, *id.* (ECF No. 64).

Defendant's jury trial was scheduled to begin on December 6, 2021. However, on December 1, 2021, the Government filed a new Plea Agreement in which Defendant agreed to plead guilty to Counts Five and Six of the Second Superseding Indictment, charging him with possession with intent to distribute controlled substances and possession of a firearm in furtherance of a drug trafficking crime. *See* Plea Agreement, *id.* (ECF No. 96, PageID.581). The Plea Agreement noted that Defendant's guilty pleas were conditional and that he was reserving the right to appeal the denial of his motion to suppress. *Id.* If Defendant prevailed on appeal, he would have the right to withdraw his guilty pleas. *Id.* The Plea Agreement set forth that Defendant faced a mandatory minimum of 15 years for Count Five and a consecutive mandatory minimum of 5 years on Count Six. *See id.* (ECF No. 96, PageID.584). The parties appeared before the undersigned for Defendant's change of plea haring on December 3, 2021. *See* Change of Plea Hr'g Tr., *id.* (ECF No. 105).

On July 8, 2022, the Court sentenced Petitioner to 180 months' incarceration on Count Five and a consecutive term of 60 months' incarceration on Count Six, for an aggregate sentence of 240 months. *See* J., *id.* (ECF No. 129). Defendant subsequently appealed, challenging the denial of his motion to suppress and the application of the sentencing enhancement for having a prior serious drug felony. *See United States v. Johnson*, No. 22-1621, 2023 WL 5206447, at *1 (6th Cir. Aug. 14, 2023). The United States Court of Appeals for the Sixth Circuit rejected Defendant's arguments and affirmed his convictions and sentences. *See id.* The United States Supreme Court denied Defendant's petition for a writ of certiorari on January 8, 2024. *See Johnson v. United States*, 144 S. Ct. 597 (2024).

Defendant filed his § 2255 motion (ECF No. 1) on August 12, 2024. In an order (ECF No. 4) entered on August 14, 2024, the Court directed the Government to file a response. Defendant then filed a motion to supplement (ECF No. 5) and a motion for discovery (ECF No. 11). In an order (ECF No. 12) entered on December 11, 2024, the Court granted Defendant's motion to supplement and denied his motion for discovery. After receiving extensions of time (ECF Nos. 8, 10, 13), the Government filed its response and an affidavit from attorney Karafa on February 14, 2025. (ECF No. 16.) Defendant subsequently filed a one-page affidavit in lieu of a reply. (ECF No. 17.)

## II.    Standard of Review

### A.    Merits

A prisoner may move to vacate his sentence under 28 U.S.C. § 2255 if he can demonstrate that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it "is otherwise subject to collateral attack." 28 U.S.C. § 2255. However, "Section 2255 does not provide relief for just any alleged error." *Bullard v. United*

*States*, 937 F.3d 654, 658 (6th Cir. 2019). To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986)).

### B.    Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a movant must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant in a way that led to an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, and viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential." *Roe v. Flores-Ortega*, 528 U.S.460, 477 (2000) (internal quotation marks omitted). Counsel is not ineffective unless he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To establish prejudice, a movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694; *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc) ("[T]he threshold issue is not whether [movant's] attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory.").

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

### C.    Evidentiary Hearing

The Court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

### III.    Discussion

Defendant raises the following grounds for relief in his § 2255 motion:

I.    [Defendant's] counsel provided ineffective assistance by advising [Defendant] to enter a guilty plea to the § 924(c)(1)(A)(i) count.

II.     [Defendant's] appeal attorney provided ineffective assistance by failing to develop and preserve the argument, thus causing the argument to be forfeited.

III.    New Supreme Court ruling in *Erlinger v. United States* renders [Defendant's] sentencing enhancement pursuant to § 851 invalid.

(Br. Supp. § 2255 Mot., ECF No. 2, PageID.13.) The Court has granted Defendant permission to supplement his first ground to "include the fact that defense counsel failed to explain to [him] the elements of constructive possession of a controlled substance and the elements that the [G]overnment must prove in order to obtain a conviction." (ECF No. 5, PageID.35.) The Government contends that Defendant's grounds for relief are meritless. (ECF No. 16.)

### A.     Grounds I and II—Ineffective Assistance of Counsel

As his first ground for relief, Defendant avers that attorney Karafa rendered ineffective assistance during plea negotiations by advising Defendant to plead guilty to the § 924(c) charge as well as for failing to explain constructive possession to Defendant. Defendant contends that he would not have pleaded guilty had counsel provided adequate advice. As his second ground for relief, Defendant faults counsel for not developing an argument concerning his prior drug conviction on direct appeal. The Court considers each of Defendant's assertions of ineffective assistance of counsel below.

### 1.     Ground I—Ineffective Assistance Regarding Plea

As his first ground for relief, Defendant contends that counsel rendered ineffective assistance by advising Defendant to plead guilty to the § 924(c) charge. (Br. Supp. § 2255 Mot., ECF No. 2, PageID.21.) Defendant argues that the evidence did not demonstrate that he possessed a firearm in furtherance of his drug trafficking. (*Id.*) In support of his argument, Defendant avers that he told counsel that "the firearm was not to protect the drugs, the firearm was not there to promote or facilitate the transactions." (*Id.*, PageID.23.) Instead, according to Defendant, "he did

8

not sell drugs out of his home, and . . . he never took the gun out of the house." (*Id.*) Defendant notes that the only evidence—the fact that the gun "was locked in a safe with some drugs"—does not demonstrate possession in furtherance of drug trafficking. (*Id.*, PageID.24.) Defendant argues that had counsel advised him of what the Government had to prove to show that he possessed a firearm in furtherance of trafficking, he would not have pleaded guilty and instead would have proceeded to trial. (*Id.*, PageID.25.)

As noted above, the Court has granted Defendant permission to supplement this ground to "include the fact that defense counsel failed to explain to [him] the elements of constructive possession of a controlled substance and the elements that the [G]overnment must prove in order to obtain a conviction." (ECF No. 5, PageID.35.) Defendant argues that if counsel had "fully explained to [him] what exactly constitutes constructive possession of a controlled substance . . ., then [he] would not have pled guilty." (*Id.*)

To determine whether a guilty plea is valid, the Court must consider "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A constitutionally valid guilty plea must meet several requirements. First, the defendant must be competent to plead guilty. *See Brady v. United States*, 397 U.S. 742, 756 (1970). "[T]he standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against h[er].'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). The defendant must also have notice of the nature of the charges against him. *See Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). The defendant must enter the plea voluntarily, i.e., the

plea cannot be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant." *Brady*, 397 U.S. at 750; *see also Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").

The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." (internal quotation marks and citation omitted)). Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267–68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel can render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56–57.

The *Strickland* test applies to guilty plea challenges based on ineffective assistance of counsel. *Id.* at 58. In the context of guilty pleas, the first prong of *Strickland* remains the same, and the "second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 58–59. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there

is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Attorney Karafa has addressed Defendant's assertions in a detailed affidavit. Attorney Karafa avers that he had "a total of 20 discussions/conferences" with Defendant before the December 3, 2021, change of plea hearing. (ECF No. 16-1, PageID.96, ¶ 15.) During those conferences, attorney Karafa reviewed all aspects of the case with Defendant, including the statutory charges and penalties and the Government's burden of proof. (*Id.*, PageID.97, ¶ 20.)

In a report dated April 22, 2021, which attorney Karafa prepared and mailed to Defendant after a video conference that occurred on April 20, 2021, attorney Karafa discussed the terms of the first proposed plea agreement and also set forth what the Government would have to prove in order for Defendant to be found guilty of Count Six, charging him with possession of a firearm in furtherance of drug trafficking. (*Id.*, PageID.99, ¶ 29.) In a September 10, 2021, letter, attorney Karafa explicitly noted that if Defendant pleaded guilty to Counts Five and Six, he would face a mandatory minimum of 20 years. (*Id.*, PageID.101, ¶ 33.)

Attorney Karafa goes on to state:

> Movant Johnson and I discussed numerous times the elements of the charges the Government must prove in the event of a trial, and more specifically the elements relating to the firearm count, the evidence obtained during law enforcement's execution of the search warrant at the Allen Street residence, and the various factors relating to the presence of the firearm in the safe with the discovered controlled substances.

(*Id.*, PageID.102, ¶ 41.)

After Defendant withdrew his first guilty plea, he met with attorney Karafa on November 28, 2021, and "once again raised the prospect of a plea agreement." (*Id.*, PageID.104, ¶ 54.) Defendant asked attorney Karafa to "*get the best deal*" that he could." (*Id.*) After the final pretrial conference, attorney Karafa raised the possibility of another plea agreement with the Government.

11

(*Id.*, PageID.105, ¶ 56.) The Government noted "that a plea-based disposition remained possible, but will definitely require the gun count, and it must be a proposal put forth on behalf of Movant Johnson." (*Id.*, ¶ 57.) Thereafter, at Defendant's request, attorney Karafa proposed that Defendant plead guilty to Count Five, charging him with possession with intent to distribute controlled substances, and Count Seven, charging him with being a felon in possession of a firearm. (*Id.*, ¶ 58.) In an email response, the Government stated:

> I appreciate your persistence on this, but our office will not approve a resolution that does not include guilty pleas to the most serious readily provable offenses, which here means Counts 5 and 6. We do not dismiss § 924(c) charges except in extraordinary circumstances, almost all of which contemplate extensive cooperation by a defendant. None of those circumstances apply to Mr. Johnson.

(*Id.*, ¶ 59.) Ultimately, Defendant accepted the new plea agreement that was filed on December 1, 2021. (*Id.*, ¶ 60.)

Attorney Karafa's affidavit is corroborated by the record before this Court. Defendant's written plea agreement set forth what the Government would have to prove to show that Defendant was guilty of Counts 5 and 6 of the Second Superseding Indictment. *See* Plea Agreement, *United States v. Johnson*, No. 1:21-cr-34 (W.D. Mich.) (ECF No. 96, PageID.582). The agreement stated that "Defendant is pleading guilty because Defendant is guilty of the charges described above." *Id.*, (ECF No. 96, PageID.583). The plea agreement set forth the following factual basis to which the parties stipulated:

> On multiple occasions between May and June 2020, Defendant sold heroin and/or a mixture and substance containing both heroin and fentanyl for profit. This led to investigators arresting Defendant on February 2, 2021. On that day, surveillance officers observed Defendant leaving his residence in Muskegon, Michigan. After arresting Defendant, investigators sought and obtained a search warrant for Defendant's residence. Inside the kitchen, Defendant had secreted a sentry safe inside of which he had placed quantities of crack cocaine, heroin, and fentanyl, as well as more than $6,000 in cash, and a loaded, stolen Springfield Armory, Model XD-45, .45 caliber semiautomatic pistol, bearing serial number BY331772. Defendant possessed the handgun in furtherance of his drug trafficking activities. Elsewhere in the house, Defendant had hidden approximately 290 grams of

12

> methamphetamine. During the search, officers also discovered additional ammunition, loaded magazines, digital scales, and baggies—all tools used by the Defendant to package and distribute the illegal drugs.

*Id.*, (ECF No. 96, PageID.586).

> When Defendant signed his plea agreement, he did so under the following paragraph:

> I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

*Id.* (ECF No. 96, PageID.591).

During the December 3, 2021, change of plea hearing, Defendant represented that he had received a "full opportunity" to discuss Counts Five and Six with attorney Karafa, and that he was satisfied with attorney Karafa's work and representation. *See* Change of Plea Hr'g Tr., *id.* (ECF No. 105, PageID.692). Defendant understood that he had the "absolute right" to not plead guilty and instead proceed to trial. *Id.*

Counsel for the Government then summarized the plea agreement. *See id.* (ECF No. 105, PageID.693–695.) When asked by the Court, Defendant represented that he had signed the plea agreement after attorney Karafa discussed all of its terms with him, and that he had no questions regarding the plea agreement. *Id.* (ECF No. 105, PageID.696). Defendant noted that he was satisfied with attorney Karafa's "explanations to [him] regarding the terms and conditions of the plea agreement." *Id.*

Defendant represented that he understood the charges contained in Counts Five and Six. *Id.* (ECF No. 105, PageID.698). He also understood the minimum and maximum penalties he faced by pleading guilty to Counts Five and Six. *Id.* (ECF No. 105, PageID.698–699). Defendant then

entered his guilty plea, and acknowledged his understanding of the rights he was giving up by pleading guilty. *Id.*, (ECF No. 105, PageID.699–702).

When asked, Defendant denied that anyone had threatened, forced, or coerced him into pleading guilty. *Id.* (ECF No. 105, PageID.703). Defendant denied that "any promises of leniency or benefit," other than those set forth in the plea agreement, had been made. *Id.* Defendant represented that he was "freely and voluntarily" pleading guilty. *Id.* Defendant acknowledged that the factual basis set forth in the plea agreement was true. *Id.* (ECF No. 105, PageID.704).

At the end of the hearing, the Court found Defendant's plea "to be freely and voluntarily entered without promises of leniency or benefit except as stated in the plea agreement." *Id.* The Court find "no evidence of force or coercion." *Id.* (ECF No. 105, PageID.705). The Court noted that by Defendant's own admission, he was guilty of the crimes set forth in Counts Five and Six. *Id.*

Here, Defendant "offers no evidence—beyond [his self-serving assertions set forth in his affidavit]—to suggest that his plea was unknowing or involuntary" because of counsel's alleged ineffectiveness. *See United States v. Sturgill*, 761 F. App'x 578, 582 (6th Cir. 2009). Under settled Sixth Circuit authority, Defendant is bound by the statements that he made under oath at the change of plea hearing. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure [under Rule 11 of the Federal Rules of Criminal Procedure], 'the defendant is bound by his statements in response to that court's inquiry.'" (quoting *Moore v. Estelle*, 526 F.2d 690, 696–97 (5th Cir. 1976))); *see also United States v. Hutto*, 198 F. App'x 715, 178 (10th Cir. 2006) ("Appellant makes no mention of any of his admissions in his briefs on appeal, so he has not really challenged the district court's reasoning at all. He did not provide an affidavit to establish his new assertions that his counsel coerced him to plead guilty

because counsel was unprepared for trial and because the government was threatening additional charges. Indeed, even if he had provided such an affidavit, it would contradict the admissions he made under oath at his change of plea hearing. In short, appellant's arguments on appeal are unsupported by any facts."). There is no suggestion here that the Court failed to comply with its obligations under Rule 11. *See United States v. Ataya*, 884 F.3d 318, 323–26 (6th Cir. 2018).

As noted above, to succeed on his claims of ineffective assistance, Defendant must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. In his affidavit, Defendant claims that he told counsel that he did not sell methamphetamine and that he knew nothing about the methamphetamine found during the search of his residence. (ECF No. 17, PageID.109, ¶ 1.) Defendant also suggests that counsel "never properly reviewed the charges with him," and never explained what the Government would have to prove to demonstrate that Defendant had possessed a firearm in furtherance of drug trafficking. (*Id.*, ¶¶ 1–2.) He contends further that if counsel had advised him, he would have proceeded to trial instead of pleading guilty. (*Id.*, ¶ 2.)

Defendant's assertions are wholly belied by his plea agreement and the statements Defendant made under oath at the change of plea hearing. Moreover, the test for prejudice "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). Here, Defendant has failed to convince this Court. Other than his self-serving conclusory statements that he would have proceeded to trial, Defendant offers no evidence to demonstrate that a decision to reject the plea offer would have been rational. Had Defendant been convicted of all counts at trial, he almost certainly would have faced a much

greater sentence than the 240 months he received. By pleading guilty after discussing his options and considering all the evidence with counsel, Defendant avoided that prospect.

In sum, Defendant freely and voluntarily entered his guilty plea, and he has not demonstrated that counsel was ineffective regarding the ways he suggests. Defendant, therefore, is not entitled to relief with respect to ground I.

### 2.    Ground II—Ineffective Assistance Regarding Appeal

As his second ground for relief, Defendant faults counsel during appellate proceedings for "fail[ing] to develop and preserve [Defendant's] argument that Michigan's cocaine definition is broader than the federal definition." (Br. Supp. § 2255 Mot., ECF No. 2, PageID.25.) Defendant avers that Michigan criminalizes "[123I]ioflupane" whereas the federal Government does not. (*Id.*, PageID.28.) Defendant faults counsel for merely noting in passing that the federal Government does not criminalize that substance. (*Id.*, PageID.25.) He contends that counsel's failure to elaborate upon this statement caused his argument "to be forfeited." (*Id.*) Defendant argues that "[i]f counsel would have developed this argument it would have been considered by the supreme court, and preserved for argument on certiorari. Therefore, the result would have been different." (*Id.*, PageID.28.)

> On direct appeal, the Sixth Circuit stated:
>
> Start with Johnson's argument that Michigan defines cocaine more broadly than the federal government. Our circuit recently held that Michigan's definition of cocaine covers the same substances as the federal Controlled Substances Act but is no broader than that law. *United States v. Wilkes*, 2023 WL 5163389, —— F.4th ——, at *6–9 (6th Cir. 2023). Although *Wilkes* considered an enhancement for a prior "serious drug offense" under ACCA, its holding applies here with equal force because it settled the meaning of cocaine under the Controlled Substances Act. *See id. Wilkes* makes clear that Johnson's Michigan convictions are "serious drug felon[ies]" under 21 U.S.C. § 841(b)(1)(A).
>
> That leaves Johnson's undeveloped [123I]ioflupane argument. He merely notes in passing that the Controlled Substances Act does not criminalize this cocaine derivative. But he does so without elaboration. And he makes no response in either

his opening brief or his reply to the district court's and the government's arguments that (1) the court should look to federal and state schedules at the time of his Michigan drug convictions and that (2) Michigan's drug schedules never really included [$^{123}$I]ioflupane because its distribution could not realistically be prosecuted. Johnson cannot present an "argument in the most skeletal way" and leave this court to "put flesh on its bones." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (quotation omitted). By failing to develop and preserve the argument, Johnson has forfeited it. *See United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006).

*Johnson*, 2023 WL 5206447, at *2–3.

Defendant has not—and cannot—demonstrate that the outcome of his appeal would have differed had counsel developed this argument. In 2011, the Supreme Court "held that, when determining the maximum term of imprisonment for a prior offense, courts must look to the punishment authorized under the statute at the time of the state conviction rather than at the time of current federal sentencing." *United States v. Clark*, 46 F.4th 404, 409 (6th Cir. 2022) (citing *McNeill v. United States*, 563 U.S. 816, 825 (2011)). *McNeill* concerned the issue of whether McNeill had three prior convictions for a violent felony or serious drug offense in order to trigger the mandatory minimum of 15 years under the Armed Career Criminal Act (ACCA). *See McNeill*, 563 U.S. at 818. In *Clark*, the Sixth Circuit extended *McNeill*'s holding to apply to interpretations of the Sentencing Guidelines' definitions of serious drug offenses. *See Clark*, 46 F.4th at 409.

"[$^{123}$I]ioflupane [is] a radioactive isotope in a pharmaceutical product known as 'DaTscan,' used to evaluate and diagnose patients with Parkinson's disease." *United States v. Taylor*, No. 20-cr-20449, 2022 WL 3447596, at *3 (E.D. Mich. Aug. 17, 2022). This isotope "was, by definition, a Schedule II controlled substance because it is derived from cocaine via ecgonine, but [it was] excepted from Schedule II in September 2015." *Id.*

Last year, the Supreme Court considered the "question whether a state crime constitutes a 'serious drug offense' if it involved a drug that was on the federal schedules when the defendant possessed or trafficked in it but was later removed" for purposes of application of the ACCA. *See*

*Brown v. United States*, 602 U.S. 101, 105 (2024). The Court held "that such an offense qualifies." *Id.* Notably, in *Brown*, the Supreme Court rejected the defendant's argument "that the delisting of [$^{123}$I]ioflupane prevented a pre-2015 state drug-trafficking conviction from qualifying as a predicate offense under § 924(e)." *United States v. Jackson*, No. 23-1508, 2025 WL 80372, at *6 (6th Cir. Jan. 13, 2025) (citing *Brown*, 602 U.S. at 106). Instead, under *Brown*, "a state drug conviction counts as an ACCA predicate if it involves a drug on the federal schedules at the time of that offense." *Brown*, 602 U.S. at 123.

In the opinion regarding Defendant's appeal, the Sixth Circuit noted that "[a] 'serious drug felony under § 841(b)(1)(A) covers the same ground as a 'serious drug offense' under the" ACCA. *Johnson*, 2023 WL 5206447, at *2. In light of that fact, the Court sees no reason not to extend the Supreme Court's holding in *Brown* to Defendant's argument. Here, Defendant "incurred three convictions under Mich. Comp. Laws § 333.7401 in May 2015 for delivering crack cocaine." *See id.* Thus, Defendant sustained his state conviction before [$^{123}$I]ioflupane was delisted under the federal controlled substances scheduled in September 2015. Accordingly, because both Michigan and federal law criminalized [$^{123}$I]ioflupane as of May 2015, any further argument by counsel regarding this issue would not have changed the outcome of Defendant's appeal.

In sum, Defendant has failed to demonstrate that the issue not presented "was clearly stronger than issues that counsel did present" on direct appeal. *Smith*, 528 U.S. at 289. Accordingly, for the reasons set forth above, Defendant is not entitled to relief with respect to ground II.

### B.    Ground III—*Erlinger* Claim

As his third and final ground for relief, Defendant contends that under the Fifth and Sixth Amendments, he was entitled to "have a jury decide whether his prior conviction was a serious drug felony." (Br. Supp. § 2255 Mot., ECF No. 2, PageID.29.) In support of that argument,

Defendant cites *Apprendi v. New Jersey*, 530 U.S. 455 (2000); *Alleyne v. United States*, 570 U.S. 99 (2013); and *Erlinger v. United States*, 602 U.S. 821 (2024).

## 1.    *Erlinger* Argument

As an initial matter, Defendant's reliance on *Erlinger* is misplaced. *Erlinger* dealt with the counting of prior offenses for purposes of the ACCA. The ACCA provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e). The ACCA provides that the three previous convictions used as predicate offenses must have been "committed on occasions different from one another." *See* 18 U.S.C. § 924(e)(1). In 2022, the Supreme Court granted certiorari to resolve a circuit split regarding the meaning of the ACCA's "occasions" clause. *See Wooden v. United States*, 595 U.S. 360, 365 (2022). The *Wooden* Court concluded that the inquiry regarding whether the predicate offenses occurred on different occasions is "multi-factored in nature." *See id.* at 369. Notably, the Court stated:

> Timing of course matters, though not in the split-second, elements-based way the Government proposes. Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion; not so offenses separated by substantial gaps in time or significant intervening events. Proximity of location is also important; the further away crimes take place, the less likely they are components of the same criminal event. And the character and relationship of the offenses may make a difference: The more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion.

*Id.* After considering those factors, the Court concluded that Wooden, who had burglarized ten storage units at one storage facility on a single occasion and who pleaded guilty to ten burglary

counts, had not committed his offenses on separate occasions and, therefore, was not subject to enhanced sentencing under the ACCA. *Id.* at 375.

Two years later, the Supreme Court revisited the ACCA's "occasions" clause to determine "whether a judge may decide that a defendant's past offenses were committed on separate occasions under a preponderance-of-the-evidence standard, or whether the Fifth and Sixth Amendments require a unanimous jury to make that determination beyond a reasonable doubt." *Erlinger*, 602 U.S. at 825. The Court agreed with Erlinger, concluding that he "was entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt." *Id.* at 835. Thus, after *Erlinger*, a defendant subject to the sentencing enhancements set forth in the ACCA is now entitled to a jury determination concerning whether their prior qualifying felonies occurred on separate occasions.

Here, Defendant did not plead guilty to the § 922(g) violation, and he was not sentenced pursuant to the ACCA. For those reasons alone, Defendant's reliance on *Erlinger* is misplaced. Furthermore, even if there were a cogent argument to apply *Erlinger* to Defendant's sentence, *Erlinger* announced a new procedural rule that does not retroactively apply to Defendant's case.

New rules announced by the Supreme Court apply "only in limited circumstances" to "convictions that are already final." *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004). First, substantive rules generally apply retroactively. *See id.* New substantive rules "include 'rules forbidding criminal punishment of certain primary conduct,' as well as 'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Montgomery v. Louisiana*, 577 U.S. 190, 198 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)). In *Montgomery*, the Court defined substantive rules as those that "set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power

to impose." *Id.* at 201. For example, in *Montgomery*, the Supreme Court concluded that the new rule announced in *Miller v. Alabama*—prohibition on imposing mandatory life without parole for juvenile offenders—was a new substantive rule that applied retroactively to cases on collateral review. *Id.* at 206.

New procedural rules, however, "generally do not apply retroactively." *Schriro*, 542 U.S. at 352. New procedural rules include those rules "that regulate only the *manner of determining* the defendant's culpability." *Id.* at 353 (emphasis in original). The Supreme Court has noted that it "give[s] retroactive effect to only a small set of 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)); *see also Teague v. Lane*, 489 U.S. 288, 311 (1989)). It is not enough that a new procedural rule be "fundamental"; "the rule must be one 'without which the likelihood of an accurate conviction is *seriously* diminished." *Id.* (quoting *Teague*, 489 U.S. at 313).

In light of the foregoing, the Court concludes that the rule announced in *Erlinger* does not amount to a new substantive rule, as the *Erlinger* decision did not "set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Montgomery*, 577 U.S. at 201. Instead, the rule announced in *Erlinger* only alters "the manner of determining the defendant's culpability." *Edwards v. Vannoy*, 593 U.S. 255, 276 (2021); *see also Erlinger*, 602 U.S. at 859 n.3 (Kavanaugh, J., dissenting) ("For any case that is already final, the *Teague* rule will presumably bar the defendant from raising [*Erlinger*'s] new rule in collateral proceedings.").

Moreover, the Court cannot conclude that the rule announced in *Erlinger* amounts to a "watershed rule of criminal procedure" that should be given retroactive effect to cases on collateral review. Notably, the Supreme Court "has identified only one pre-*Teague* procedural rule as

21

watershed: the right to counsel recognized in the Court's landmark decision in *Gideon v. Wainwright*, 372 U.S. 335 . . . (1963)." *Vannoy*, 593 U.S. at 267. The *Vannoy* Court noted that it "has never identified any other pre-*Teague* or post-*Teague* rule as watershed. None." *Id.* The majority noted that if "landmark and historical criminal procedure decisions" do not apply retroactively on collateral review, the Court could not "responsibly continue to suggest" to litigants and other courts that any "new rules of criminal procedure can satisfy the watershed exception." *Id.* at 271. The Court forcefully stated: "It is time—probably long past time—to make explicit what has become increasingly apparent to bench and bar over the last 32 years: New procedural rules do not apply retroactively on federal collateral review. The watershed exception is moribund. It must 'be regarded as retaining no vitality.'" *Id.* at 272 (quoting *Herrera v. Wyoming*, 587 U.S. 329, 342 (2019)).

In light of the Supreme Court's dicta in *Vannoy*, this Court agrees with the handful of other courts that have concluded that *Erlinger* did not announce a new rule that is retroactively applicable on collateral review. *See, e.g.*, *Stackhouse v. United States*, Nos. 8:15-cr-177-VMC-TGW, 8:18-cv-772-VMC-TGW, 2024 WL 5047342, at *8 (M.D. Fla. Dec. 9, 2024); *Grant v. United States*, No. 8:24-cv-02029-WFJ-CPT, 2024 WL 4729193, at *3–4 (M.D. Fla. Nov. 8, 2024); *Goff v. United States*, No. 3:22-cv-00215, 2024 WL 4701882, at *7 (M.D. Tenn. Nov. 6, 2024); *Ursery v. United States*, No. 3:22-cv-00776, 2024 WL 4652209, at *4 (M.D. Tenn. Nov. 1, 2024); *United States v. Casares-Cuevas*, No. 3:12-cr-00038-HDM-VPC, 2024 WL 4216017, at *2 (D. Nev. Sept. 17, 2024); *McAdams v. United States*, No. 23-cv-04081-ESK, 2024 WL 4100368, at *4 (D.N.J. Sept. 6, 2024). Instead, the rule announced in *Erlinger* "merely 'allocate[d] decision making authority' by requiring a jury rather than a judge' to make certain factual determinations." *Ursery*, 2024 WL 4652209, at *4 (quoting *Duncan v. United States*, 553 F.3d 442, 447 (6th Cir.

2009). As the Sixth Circuit noted in *Duncan*, courts have not made any indication that "juries [are] so much more accurate than judges such that the change brought about by [*Erlinger*'s new rule] 'implicate[s] the fundamental fairness and accuracy of the criminal proceeding.'" *Duncan*, 553 F.3d at 447 (quoting *Schriro*, 542 U.S. at 353).

In light of the foregoing, this Court concludes that while *Erlinger* announced a new rule, this new rule does not apply retroactively to cases on collateral review. Thus, even if Defendant had been sentenced under the ACCA, he could not rely upon *Erlinger* to challenge his sentencing enhancement.

### 2.     *Apprendi* and *Alleyne*

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In the subsequent case of *Blakely v. Washington*, 542 U.S. 296 (2004), the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See United States v. Booker*, 543 U.S. 220, 232 (2005) (citing *Blakely*, 542 U.S. at 303). Subsequently, in *Alleyne*, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. Specifically, in *Alleyne*, the Supreme Court concluded that "any fact that, by law, increases the penalty for a crime . . . must be submitted to the jury and found beyond a reasonable doubt." 570 U.S. at 103.

Here, Defendant's Plea Agreement set forth that a violation of 21 U.S.C. § 841(a)(1) "is normally punishable by a statutory mandatory minimum prison term of 10 years." *See* Plea

Agreement, *United States v. Johnson*, No. 1:21-cr-34 (W.D. Mich.) (ECF No. 96, PageID.583). However, the Plea Agreement also noted that if the undersigned concluded that Defendant had previously been convicted of a serious drug felony, the sentencing enhancement under 21 U.S.C. § 841(b) would be triggered. *Id.* In that case, Defendant would then face a mandatory minimum of 15 years and a maximum of life for the § 841(a)(1) conviction. *See id.* (ECF No. 96, PageID.584). The Court advised Defendant of those enhanced penalties during his change of plea hearing, and Defendant indicated that he understood. *See* Change of Plea Hr'g Tr., *id.* (ECF No. 105, PageID.698).

When a defendant pleads guilty to a charged offense and admits to the facts necessary to sustain such a charge, he forgoes the right to have each element submitted to a jury. *See United States v. Johnson*, 732 F.3d 577, 583–84 (6th Cir. 2013) ("We have recognized that *Alleyne's* extension of *Apprendi* to facts that increase a minimum statutory sentence left undisturbed our decisions holding that a defendant's knowing admission of the facts necessary for an enhanced sentence is fatal to his *Apprendi* claim."); *see also United States v. Yancy*, 725 F.3d 596, 601 (6th Cir. 2013) ("Because *Alleyne* did not involve the effect of a defendant's admission of the facts necessary for an aggravated crime, it leaves undisturbed our cases deeming such admissions fatal to *Apprendi* claims."). In other words, Defendant's guilty plea is the constitutional equivalent of a jury verdict. As discussed *supra*, the Court has already concluded that Defendant's guilty plea was entered knowingly, voluntarily, and intelligently. Defendant's *Apprendi* and *Alleyne* challenge to his sentencing enhancement is, therefore, meritless.

In sum, Defendant's reliance on *Erlinger* is misplaced, and his Fifth and Sixth Amendment rights were not violated when the undersigned, and not a jury, concluded that Defendant had

previously been convicted of a serious drug felony for purposes of the § 851 sentencing enhancement. Defendant, therefore, is not entitled to relief with respect to ground III.

In sum, the record before the Court supports a conclusion that all of Defendant's grounds for relief are meritless. Moreover, because the record before the Court conclusively demonstrates that Defendant is not entitled to relief, there is no need for the Court to conduct an evidentiary hearing. Accordingly, Defendant's § 2255 motion (ECF No. 1) will be denied.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(B), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Defendant has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Defendant's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Defendant's claims. *Id.*

25

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Defendant's claims was debatable or wrong. Therefore, the Court will deny Defendant a certificate of appealability. Moreover, although Defendant has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Defendant might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

V.    **Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

A separate judgment will follow. *See Gillis v. United States*, 729 F.3d 641, 643 (6th Cir. 2013) (requiring a separate judgment in habeas proceedings).


Dated:   March 7, 2025                          /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge